## Edward B. Sanner v. Sexton E. Smith.

1. CONVEYANCES—*Reformation of Deeds—Mutual Mistakes.*—A sold a tract of land to B, and intended in the deed to make a reservation of certain crops. The scrivener employed by both parties to prepare the deed was instructed to reserve the crops, but without the knowledge of A, and by mistake, he omitted to do it. When the deed was completed A did not read or examine it, being informed that it was all right, signed and executed it, and in ignorance of the mistake delivered it to B. *It was held,* that the mistake was mutual, and that A was entitled to have the deed reformed in a court of chancery.

2. CHANCERY PRACTICE—*Presumptions in Support of Decrees.*— Where a case is heard before a judge, sitting as a chancellor, the presumption is that he considered only such evidence as was proper.

**Memorandum.**—Bill in chancery to reform a conveyance, and for injunction. Appeal from the Circuit Court of Macon County; the Hon.

FERDINAND BOOKWALTER, Judge, presiding. Decree for complainant. Heard in this court at the May term, 1893, and affirmed. Opinion filed October 28, 1893.

The opinion states the case.

APPELLANTS' BRIEF, GEORGE D. CHAFEE, BUCKINGHAM & SCHROLL AND W. C. JOHNS, ATTORNEYS.

Before a court of equity will take cognizance of an alleged mistake, it must be shown to have been mutual, shared in by both parties, unintentional, not as one intended, and free from negligence.  15 Am. & Eng. L. & Eng. Ency. 628.

Mistake of agent no cause to rescind.  Conner v. Greenup, 75 Ga. 277.

It must be such that ordinary diligence would not have prevented.  Bonny v. Stoughton, 122 Ill. 536.

Neglecting of opportunity to know, bars relief.  Wood v. Price, 46 Ill. 439.

Strength of evidence required, "Clear and overwhelming."  Mundenhall v. Steckel, 48 Am. Rep. 281.

"Clear, precise and indubitable."  Sylvius v. Kosck, 117 Pa. St. 67.

"Clear and satisfactory."  Rupprer v. McConnell, 17 Ill. 212.

"Strongest and most convincing."  Hunter v. Blyen, 30 Ill. 228.

"Must be proven as satisfactorily as if admitted."  Ford v. Joyce, 78 N. Y. 618.

To justify the reformation of a written instrument upon the ground of mere mistake, the alleged mistake must be one of fact and not of law, must be proved by clear, entirely satisfactory evidence, a mere preponderance of evidence not being sufficient, and the mistake must be mutual and common to both parties to the instrument.  Oswald v. Sproehnle, 11 Brad. 368.

Where a party seeks to rectify a written instrument on the ground of mistake, the rule is, the evidence must be such as to leave no fair and reasonable doubt upon the mind that

the instrument does not embody the final intention of the parties. Sutherland v. Sutherland, 69 Ill. 481.

Rectification can only be had where both parties have executed an instrument under a common mistake and have done what neither intended. Kerr on Fraud and Mistake, 421; Diman v. Providence R. R. Co., 5 R. I. 130; Lyman v. United Ins. Co., 17 Johns. 373.

Chief Justice Lawrence:

" A deed will not be reformed by the decree of a court, so as to make it express something entirely different from what was written on its face, except upon evidence of the clearest and most satisfactory character." Palmer v. Converse, 60 Ill. 313.

The rule is exceedingly strong. German Ins. Co. v. Danes et al., 131 Mass. 346.

It must appear beyond reasonable doubt that the precise terms of a contract orally agreed upon, when reduced to writing, expresses a different contract. 15 Am. and Eng. Ency., 650.

Judge Wall, of this court, lays down the same rule.

" Where it is sought to reform a written instrument upon the ground of mutual mistake, it is necessary for complainant to clearly and satisfactorily establish the mistake alleged, and relief will not be granted where the evidence is loose, equivocal or contradictory, or is in its texture open to doubt or opposing presumptions. Reformation will not be made on a mere preponderance of evidence, but only upon a certainty of error." Warrick v. Smith, 36 Ill. App. 619.

MILLS BROS. & MILLS, attorneys for appellee.

MR. JUSTICE PLEASANTS DELIVERED THE OPINION OF THE COURT.

This was a bill filed by appellee to reform his deed to appellant, so as to reserve the rent corn on the premises conveyed, and in the meantime to restrain a replevin suit brought by the grantee of said corn. It averred that by the

agreement of the parties it was to be reserved but the provision was, by mistake, omitted from the deed. The material averments were denied by the answer, to which a replication was filed, and on final hearing upon the pleadings and proofs a decree was entered according to the prayer of the bill, from which this appeal was taken.

Appellee owned Sec. 18, T. 14 N., R. 3, east of the third P. M., and was endeavoring, through Johnson & Knight, real estate agents at Decatur, to effect the sale of it. It was subject to a mortgage for $22,000, dated June 29, 1887, and due July 1, 1892, with interest at seven per cent, payable semi-annually, July 1st and January 1st of each year.

On September 10, 1888, Johnson obtained from his brother-in-law, the appellant, the following offer:

"Sept. 10, 1888, proposition I now make to S. E. Smith for the S. $\frac{1}{2}$ of Sec. 18, Tp. 14 N., R. 3, E. 3rd P. M. I will agree to pay $10,000 for the same, and will assume the mortgage now on the place and take a second mortgage on the balance, and will also advance $2,000 cash. Interest to commence March 1, 1889. Taxes to be paid by S. E. Smith for 1888. (Signed) E. B. Sanner."

The half section described was then occupied by tenants whose terms extended to March 1, 1889. They had one hundred and thirty or forty acres in corn, of which two-fifths were to be delivered for rent. It was a good crop, about mature and ready to be gathered.

By the terms of the proposition the vendor would become debtor to the vendee to the amount of $3,000, upon the assumption that the premises were to bear half of the mortgage debt mentioned, which was to be secured by a second mortgage, but when to be payable, with what interest, if any, or upon what property, is not indicated. For it could not have been intended that Sanner should accept as security the property he was proposing to buy, nor, for the reason that Smith was also intending to sell the other half of the section, that he would give it upon that. Sanner knew that the premises were occupied by tenants. Whether he knew the terms of their lease or not, does not appear,

but the proposition contained no reference to the questions of possession or rent. Johnson had written it hurriedly, after a talk with Sanner and in his presence, and it was manifestly incomplete, leaving several matters to be yet arranged before a satisfactory deed could be made.

On the same day Johnson showed or read it to Smith, who did not object to it for anything it did not contain, but was not satisfied with the price offered nor with the date from which interest was to be paid on the mortgage to be assumed, and therefore declined to accept it. Johnson then talked with Sanner again, and with his consent $200 was added to the price and the date changed from March to January; after which Smith signed the following, thereunder written: "I accept the above proposition." Johnson sent notice thereof to Sanner, who then came and saw him about procuring the $2,000 to be advanced and preparing the deed, notes and mortgages, and left him to attend to it. On the 17th, Smith and his wife went to Johnson's office to execute the deed; Smith examined it only far enough, as he says, to see that the description covered the land intended, having the fullest confidence in Johnson's knowledge and care. He asked him, however, to read it to his wife, but Johnson only explained it generally to her and in his own language. It was in the statutory form, excepting that the premises were made "subject to $12,700, together with interest that may accrue on same from and after January 1, 1889, the same being part of a certain mortgage note," etc., as hereinbefore described, and also declared that "the grantor assumes all taxes against the above described land for the year 1888."

At the same time a like deed of the north half was executed to Silas E. Warrick, upon a like proposition, subject to $9,300, being the residue of said mortgage debt.

Soon afterward Johnson informed Sanner of the execution of the deed, and was told by him to have it recorded. He never saw it until it was left for record, which was on September 20, 1888. He did see it at the recorder's office on that day or the next.

About the middle of October, when the tenants were

gathering the corn, appellant, following the example of Warrick, claimed the rent portion, and upon demand and refusal of it, brought an action of replevin for it; and thereupon this bill was filed.

In a like case against Warrick, a decree was made upon the pleadings and proofs in favor of the complainant, which was affirmed on appeal, both by this court and the Supreme Court, as reported in 36 App. 619 and 137 Ill. 504.

The questions of fact involved in these cases—whether it was the intention of the parties that the deed should contain a reservation of the rent corn and its omission was a mistake of fact, also mutual and without fault of the grantor, and the rule of law as to the measure of proof required of complainant—were the same. Upon the assumption that such was the intention of the grantor, we think the opinions referred to are decisive that the omission was a mistake of fact and without *laches* on his part, since we understand from this record that the evidence bearing upon those questions were substantially if not precisely the same, and it is conceded that in each of those opinions the rule as to the measure of proof was well stated.

This leaves for our consideration the question whether such intention and mistake are chargeable to the grantee also.

For appellant it is contended that upon these questions the Warrick case was widely different from this.

As to the intention, all the difference suggested is claimed to be shown by the following quotation from the opinion of the Supreme Court: " *The parties agreed* in advance of the execution of the deed, that the vendor should have the portion of the crops due him for rent. Johnson gave *Warrick* to understand that the crops *were reserved. Warrick admitted this to a number of witnesses.*" The italics are counsel's, and must have been intended to indicate the language which they claim could not be applied to appellant in this case.

It is evident that the quotation is a statement of the court's conclusions from the evidence, and in view of the

rule requiring such a full measure of proof. It is immediately preceded by the statement of that rule, and of the fact that the court had "examined the evidence with some care." The last sentence in the quotation is also immediately followed by this statement: "The agreement for the reservation of the crops by the vendor is established by the testimony of appellee, of Johnson, of Jordan L. Smith and of at least two other witnesses, while over against it stands the testimony of Warrick alone, who never thought of claiming the crops until he subsequently discovered that Johnson had accidentally omitted from the deed a clause reserving them to the grantor. That this omission was a mere oversight is satisfactorily shown by the evidence of S. E. Smith and Johnson." Every sentence in the quotation by counsel has reference to the alleged agreement and to the evidence of it in positive statement on one side and admissions on the other.

We have not examined the evidence in the Warrick case since it was decided in this court, but from general recollection, and what appears in this record, we think the likeness so close that by substituting the name of appellee for that of Warrick, and for the word "alone" the words "and his brother," quoted from that opinion by counsel or by us, it can be literally applied here. The conclusions might indeed be wrong, but it is supported and opposed as stated, and as a description of this case upon this point it would be entirely accurate so far as it goes.

We do not propose to do more than to state the substance and effect of the evidence, as it strikes us; nor is more necessary in order to show this likeness.

Appellee testified that he had told appellant what he could have the land for per acre, but that he (appellee) wanted the corn.

Johnson testified that he well knew from repeated expressions of appellee, that in any sale he might negotiate, the corn was to be reserved, and that he clearly gave appellant so to understand; that he told him Smith had been holding the farm at $45 per acre, but he (Johnson) thought it could

be bought for $40, and possibly a shade less; that the land itself was worth $40 per acre; that the offer proposed was considerably less, but that there was a good crop on the land, which would make it realize to appellee about that amount.

That he so understood it is almost conclusively shown by the fact that as soon as he learned that Sanner was claiming the corn he went with Smith to see him, and expressed his opinion of it in terms which, considering that they were addressed to a brother-in-law and in the presence of his wife, were remarkably forcible. Sanner himself says that he threatened to break him up if he could, in case he persisted in the claim.

Jordan L. Smith (a tenant of the Warrick land, who had been a witness in that case also) testified at length to a conversation with appellant about the 16th of October, in the course of which he asked him if he understood when he purchased the land that he purchased the corn, and that appellant said he didn't suppose the other parties intended it that way, but they had not put it in the deed; that there had been a verbal reservation, but Johnson had failed to put it in the deed; that if Warrick could hold the corn on the part he bought, he (Sanner) could hold it on his part, and he intended to try to do so; that Warrick wanted him to hold it; that there had been trouble between him (Sanner) and Smith in regard to title before that, and he intended to hold it to get even with him.

Appellant testified that Johnson had told him, as an inducement to buy, there was a good crop of corn on the land which would help to make the first payment, and that he would not have bought the land without the crop. In view of that testimony, we think there is significance in that of John McCarthy, his two sons and George E. Knight, the partner of Johnson.

John McCarthy says he asked appellant if he had bought the corn, and the reply was that he had not directly bought the corn, but it wasn't put in the deed, and he was going to hold it if he could.

J. W. McCarthy says that in October, while they were husking, Sanner said he ought to have looked after it a little sooner; that if the corn was his he wanted it, and if not, to let the law divide it.   C. H. McCarthy says that after they began to gather the corn Sanner came to the house and claimed it.   He said it was not reserved in the deed, but he thought it belonged to him.

George E. Knight says that about the first of January after the sale Sanner asked him whether Smith was ready to pay the interest on the $4,500, and he told him he was not; that he expected to make the money out of the crop, and was trying to hold that; and Sanner simply said " I am going by the deed."

Appellee says that when appellant came to demand the corn, just before the replevin suit was commenced, he asked him if he thought it belonged to him, whether he bought it, and he answered, " That is what the deed says; " that he was arguing it was not in the deed, and that he made no claim for it except that it was not in the deed.

It does not appear that at any time before he testified on the hearing, appellant told anybody there was no under-standing that the crop was reserved, that anything had been said about the crop in the negotiation, or that when he bought the land he expected to get the crop.   He does not appear to have claimed any right in equity to it, but in every instance expressly put it on the technical ground that it was not reserved by the deed, in a way and under circumstances which seem to indicate that he knew its omission was an oversight of the scrivener.   The plain people, the McCarthys, knew he had bought the land but could not have possession before the following March; that the year's rent had been substantially earned; that the corn was mature, and that they were about to gather or actually gathering the rent portion for their lessor, the appellee; yet the appellant was claiming it.   They had received no notice from appellee that he had transferred the rent and naturally inquired of the claimant as to his "understanding" about it.   Had he inno-cently relied on his deed would he have answered with a

doubt, that he was going to hold it "if he could;" that "if it was his he wanted it," and that he "thought" it belonged to him, and all because and only because it had not been reserved "in the deed?" But besides the facts thus known to them he knew also that by his proposition he was to pay nothing down for the land but only assumed a mortgage debt not due for nearly four years; that he was not to pay any interest on it for nearly a year and then for only so much as accrued from March 1, 1889, when the tenant's lease would expire and he would first get possession, and that his grantor was to pay all the taxes on it for the year 1888. Did he suppose that appellee intended also to give him the corn then about to be delivered for the rent of that year, already substantially earned? No wonder that he made no claim of such an actual understanding, but stood upon the deed alone, and doubted whether he could hold it.

In the light of the circumstances we may understand his uniform statements that it was not reserved in the deed as requiring that the emphasis be put upon *the deed*, and implying an admission that it was reserved, as in Jordan Smith's testimony, verbally.

Appellant also doubted whether Warrick could hold the rent corn on the land he bought. He told Jordan Smith that he had so told Warrick. Their cases were certainly much alike, and it may be inferred that it was upon such testimony as that of the McCarthys herein, in part at least, that the Supreme Court based the statement that Warrick had admitted such an agreement "to a number of witnesses." In that respect also, then, the similarity in the cases for complainants is very striking, the difference being that there the number was four while here it is five.

The only other difference is in those of the defendants, being that appellant here was corroborated in part by one witness, and Warrick stood "alone." Jacob Sanner says he was present and heard all of the conversation between Johnson and appellant when the proposition to purchase was drawn up and signed; and that, as an inducement to appellant to buy, Johnson told him "there was a good

crop on the land and it would help make a good payment on the land." This witness was a brother of appellant. Unless he was closely attending to the conversation he might have got the impression stated from Johnson's own version of what he said, which was that the crop would help to bring to Smith nearly the price he wanted, and not that it would help Sanner to pay the lesser price he was proposing to offer. But giving it all the effect that can be claimed, it affects only the comparative weight of the evidence for and against the allegation of an agreement that the corn should be reserved, and left the court to decide whether, notwithstanding such corroboration of the defendant, the complainant had furnished the measure of proof required.

It is also true of this case, as was said of the other, that appellant made no claim to the corn until after he discovered that it was not reserved in the deed. Counsel assert the contrary, but we think they are mistaken. They do not refer to any evidence in support of the assertion, nor do we find any in the record. He says he saw the deed as early as the 21st day of September, and the earliest claim shown was in October, probably near the middle.

The remaining question is whether the mistake in the deed, if it was a mistake, was made by appellant as well as by appellee.

In the Warrick case the Supreme Court found the proof to be that the scrivener in drawing up the deed acted for both the parties and by their direction. It appeared that Warrick paid him $100 to act for him, and was held to be thereby estopped to deny the agency. There was no such evidence here. But one may in fact act for another and by his direction, without compensation, and bind him by his action, even though he be the paid agent of the adverse party in interest.

Here Johnson was clearly the agent of Smith, as was perfectly understood. He was, however, a brother-in-law of Sanner and on good terms with him until after the deed was executed.

As a part of the transaction Sanner was to advance $2,000 in cash and have a mortgage security for $4,500. He did not have the money. Johnson offered to procure or try to procure it for him and he consented to have him do so. Johnson found a lender. His firm indorsed Sanner's notes for it and on them obtained the money of Mr. Lyon. Johnson's business made him familiar with notes, deeds and mortgages. From their relations and this known familiarity, Sanner might well trust him to prepare the papers; and he did so trust him. His own statement is "Johnson offered to write up the papers, and I probably told him to get them up. I left it to him to see that the papers were gotten up correctly, and relied upon him to do it. He told me he had all the papers fixed up and I told him to put them on record. When I came up here on the 21st they were on record. I hadn't seen them before that. Believing and relying upon Johnson, I didn't have anybody look at the papers." Thus, though deeply interested in the deed of the half section and in the mortgage to secure to him the $4,500, he did nothing in person to see for himself that they were satisfactory, but he did by another, of his own appointment for that purpose. He left it entirely to Johnson, and accepted his work without examination. Johnson swore that the omission of the reservation clause from the deed was a pure mistake or oversight on his part, acting for Sanner at his instance as well as for Smith. That mistake or oversight is therefore imputable to him, as was held in the Warrick case.

The witnesses were examined orally The chancellor saw and heard them. No complaint is made of his rulings on the hearing, except in admitting evidence of complainant's declaration of his intention to have the corn reserved, made to divers persons in the absence of the defendant. They would be competent and proper if they were communicated, in substance, to Sanner before the deed was executed. The presumption is that the chancellor considered only such evidence as was proper. Whether those declarations were considered or not we do not know, nor do we think it material. It is sufficient if Johnson gave Sanner to under-

stand that the reservation was intended. The court must have found that he did so, and that the proof was sufficiently clear and satisfactory. Being ourselves of the same opinion, the decree will be affirmed.